JAMES HUNTER v. WILLIAM REILEY, Jr., ET AL.

1. Eviction by a landlord of his tenant from the whole or a part of the demised premises causes a suspension of the entire rent and all remedy for its recovery during the continuance of the eviction.

2. But the eviction, to have the effect of suspending the rent, must be effected before the rent becomes due, for the rent already accrued and overdue is not forfeited by the eviction, although the rent be payable in advance.

3. In an action of covenant for rent on a lease under seal, the tenant cannot recoup his damages for a breach of covenant in the lease on the part of the landlord, at common law, or by our statute. *Practice Act*, § 129.

On rule to show cause for new trial.

The plaintiff leased to Henry W. Abbott, the Lake House, at Spring Lake Beach, Monmouth county, for the term of one year from the 1st day of April, 1879, at the yearly rent of $1000, to be paid in three payments or instalments, to wit, $500 on the execution of the lease, $250 on the 1st day of August, and $250 on the 1st day of September, 1879. The defendants, by writing under seal, became sureties for the payment of the rent as the several instalments thereof should become due and payable. The first two instalments of rent were paid; the last was unpaid. October 1st, 1879, Abbott

closed the house, went to Plainfield, left the keys with a servant, and told her if she left before he came back, to leave the keys with Richard Devine, who was an agent of the plaintiff. Abbott returned November 1st, to get some articles in the house belonging to him. The instructions given by the plaintiff to Devine were, that if Abbott would come back and pay the rent, he could have the keys and occupy the house. He says, "I had no objection to his occupying the house all winter if he would pay his rent, but I made that the terms." When Abbott asked Devine for the keys to get some articles left in the house by him, he was refused the key and possession of the premises unless he paid the rent due. An action of covenant was then brought by the plaintiff against the sureties for the instalment of rent due September 1st, 1879, and unpaid.

Argued at June Term, 1881, before BEASLEY, CHIEF JUSTICE, and Justices SCUDDER, KNAPP and REED.

For the plaintiff, *W. H. Vredenburgh.*

For the defendants, *S. D. Grimstead.*

The opinion of the court was delivered by

SCUDDER, J. It is clear, from the facts shown at the trial, and in the affidavits taken on this rule, that the tenant was evicted by the landlord before the end of his term. There was no surrender of the lease in writing, or by act and operation of law. The servant left in the rented premises was only authorized to deliver the key to the agent of the landlord for safety, in case she wished to leave before the lessee returned, and a jury would not be warranted in drawing any other inference from the circumstances as stated by the witnesses who have been examined. There was no proviso in this lease for entry on breach of the covenant for payment of rent, and the landlord could not legally enter and hold possession without the tenant's consent, until the term

was ended. A mere breach of covenant by the tenant, such as the non-payment of rent at the time appointed, gives the landlord no right of entry, unless there be a stipulation in the lease that such breach of covenant shall work a forfeiture and determination of the tenant's interest. *Den* v. *Post,* 1 *Dutcher* 286.

The direction given by the landlord to his agent to refuse the key and keep the tenant out unless he paid the rent due, was an assumption of the possession and control of the house and premises entirely at variance with the tenant's rights therein under his lease. This imposition of a condition which he had no right to enforce in this way was an indication of the landlord's purpose to exclude the tenant from the property. If the acts proven amount to a clear indication of intention on the landlord's part that the tenant shall no longer continue to hold the premises, they will constitute an eviction. *Upton* v. *Townend,* 17 *C. B.* 30.

The consequence of an eviction by a landlord of his tenant from the whole or a part of the demised premises is, that there is a suspension of the entire rent during the continuance of the eviction; the tenancy is not thereby ended for all purposes, but the rent and all remedy for its collection are suspended. *Morrison* v. *Chadwick,* 7 *C. B.* 266; *Salmon* v. *Smith,* 1 *Saund.* 204, 221; *Pendleton* v. *Dyete,* 4 *Cow.* 581; *Ogilvie* v. *Hall,* 5 *Hill* 52; *Bennett* v. *Bittle,* 4 *Rawle* 339.

But the eviction, to have the effect of suspending the rent, must be effected before the rent becomes due, for the rent already accrued and overdue is not forfeited by the eviction. *Taylor s L. & T.* *379; *Wood's L. & T.* 795, 796; 3 *Kent Com.* *464.

The rule is the same, although the rent is payable in advance and the eviction occurs before the expiration of the period in respect to which the rent claimed accrues. *Giles* v. *Comstock,* 4 *N. Y.* 270.

The facts in this case show that the rent sued for became due on the 1st day of September, and was the balance of rent

due for the remainder of the term ending on the succeeding 1st day of April; but the eviction was in November, two months after this rent had become due; it was therefore no defence for the demand of rent made in this suit. A special plea setting up this defence must state an eviction and expulsion of the lessee by the lessor before the rent became due, and a keeping of the tenant out of possession until after the rent becomes due. *Arch. L. & T.* 144.

The evidence must sustain this averment in the plea, to make it available as a defence to the action.

It does not follow from what has been said, that the tenant is without remedy for the balance of the term which he has lost by the act of the landlord, but the question presented relates to the form of the remedy. The exact defence which he has to this claim of rent by the landlord, is that the latter has broken the covenant for quiet enjoyment during the entire term, which is implied in the law upon the word "demise," contained in the lease, and for this breach of covenant on the part of the landlord the remedy of the tenant is by a separate action against the landlord for damages. Where recoupment is allowed, the tenant who has sustained damages by reason of his landlord's failure to perform his covenants in the lease, or any of them, can recoup such damages in the action brought against him for the rent, or he may maintain a separate action therefor. *Kelsey* v. *Ward*, 38 *N. Y.* 83.

But at the common law, and in our state, such recoupment is not allowed on leases under seal. In *Price's Ex'rs* v. *Reynolds*, 10 *Vroom* 171, in an action of covenant for rent on a lease under seal, the defendant pleaded, by way of recoupment, a breach of covenant on the part of the landlord; this was held not to be admissible in this state under section 129 of the Practice act, which confines the right of recoupment to actions on contracts not under seal. In this case, therefore, the only remedy that the tenant has is by a separate action for the breach of the covenant for quiet enjoyment, if the facts, on a fuller hearing and investigation, shall warrant the conclusion drawn from those now presented that there has been an

eviction, and not a surrender by operation of law, and the full consent of the parties.

On the express stipulation in the contract made by these defendants as sureties, that if Abbott should not punctually pay the rent as the several instalments became due and payable, immediate recourse might be had and made to them by demand, suit, or otherwise, without prior proceedings against said Abbott, and that their liability should continue according to the terms thereof. So long as the liability of the lessee should continue, these sureties' liability is co-extensive with that of the principal debtor. If he has no defence in this action for the rent due before the eviction, they can have none.

The rule will be discharged.